OWENS and another v. OHIO CENT. R. Co.

CENTRAL TRUST CO. OF NEW YORK v. OHIO CENT. R. Co.

*(Circuit Court, D. West Virginia. 1884.)*

1. JURISDICTION—SERVICE OF PROCESS.
   The jurisdiction of a court attaches upon the service of process, and the court whose process is first served upon the defendant will retain the cause.

2. SAME—POSSESSION OF PROPERTY IN CONTROVERSY.
   A court, having gained prior jurisdiction of a cause by the service of its process, is not deprived of its jurisdiction by reason of the actual seizure of the property in controversy by the officer of a court having concurrent jurisdiction.

3. SAME—WHERE JURISDICTION ATTACHES.
   The jurisdiction of a court of the United States to which a cause has been removed from a state court relates back to the time of the original service of process.

4. SAME—ADMINISTRATION OF TRUST ESTATE.
   The court first gaining jurisdiction of a part of a trust estate is entitled to administer the whole, even though some portion of the property lies within the domain of another court.

5. TRUSTEES—REFUSAL TO SUE—ACTION BY CESTUI QUE TRUST.
   When the trustees of a mortgage deed, executed for the security of bondholders, refuse to institute proceedings to enforce the security, the bondholders themselves are entitled to prosecute a suit for that purpose.

In Equity.

*E. L. Andrews* and *T. L. Brown*, for complainants.

*Swayne, Swayne & Hays*, for defendant.

JACKSON, J. On the twenty-eighth day of September, 1883, Nelson Robinson filed his petition in the court of common pleas for Lucas county, Ohio, making the Ohio Central Railroad Company and the Central Trust Company of New York defendants, in which petition, among other things, he prayed for the appointment of a receiver for the railroad company whose lines ran from the city of Toledo, in the state of Ohio, to the city of Charleston, in the state of West Virginia, upon which day John E. Martin was appointed receiver of the

entire line of the Ohio Central Railroad; that on the third day of October, 1883, the same bill that was filed in the court of common pleas in Lucas county, in the state of Ohio, was filed in the circuit court of Mason county, in the state of West Virginia, and John E. Martin, by the order of that court, on that day was appointed receiver. On the sixteenth day of October, 1883, Mead & Johnson filed in the circuit court of the United States for the Southern district of Ohio, a bill for the foreclosure of the river division mortgage of the Ohio Central Railroad, on which process was sued out and service had on the twenty-third day of October, 1883, and on the seventh day of November following this bill was dismissed. On the twentieth day of October, 1883, Owens & Johnson filed in the same court a bill for the same purpose, upon which process was issued and service had thereon on the twenty-sixth day of October, 1883. On the thirtieth day of October, 1883, the Central Trust Company of New York, in the same court, filed a bill for the same purpose, to which the appearance of the railroad company was entered. On the thirty-first day of October, 1883, Martin was appointed temporary receiver under the last bill. On the twenty-second day of October, 1883, Owens & Johnson filed in this court their bill of complaint on behalf of themselves, and as the representatives of the first mortgage river division bondholders of the Ohio Central Railroad Company, invoking its power to enforce the mortgage, and asking for the appointment of a receiver. Process was sued out thereon and service had on the defendants on the twenty-fifth day of the same month, and the motion for the appointment of a receiver was entered, and by order of the court set down for hearing on the twentieth day of November following; upon the hearing of which motion and at that time the Central Trust Company of New York filed their bill, claiming the right, as trustee in the first mortgage and other subsequent mortgages, to control the proceedings for the foreclosure of the mortgages and the appointment of a receiver. The two cases were heard together, and Thomas R. Sharp was appointed receiver of that portion of the road lying in this circuit.

Upon this state of facts the complainants in this suit move for an order extending the jurisdiction of Receiver Sharp over that portion of the road in the Sixth circuit lying between the Ohio river and Corning, in the state of Ohio. As a portion of this railroad is found lying in both circuits, the first question that presents itself for consideration is, which court first obtained jurisdiction over the subject-matter in controversy? And in this connection we will first consider the question of jurisdiction arising upon the proceedings had in the federal tribunals. As we have before seen, Owens & Johnson filed their bill in the Sixth circuit on the twentieth day of October, 1883, and in this circuit on the twenty-second day of October, 1883. Under the bill filed in this circuit process was sued out, and service had the day before service was had in the Sixth circuit. Not only

was this true, but there was an absolute seizure of "the *res*" under the proceedings in this court, while, under the bill filed in the Sixth circuit, there was no seizure. It will be observed that every step necessary to complete the jurisdiction of this court was taken before process was served on the defendant company under the bill filed in the Sixth circuit. But it is claimed that the filing of the bill first in the Sixth circuit, which in this proceeding is the commencement of the suit, confers jurisdiction. This of necessity cannot be so. Other necessary steps must be taken to bring the parties before the court, before a complete jurisdiction is acquired. Until that is done, the court could make no order that would affect the rights of a party. The usual mode is by service of process. It may be, and in some cases is, done by an order of the court directing a seizure of the property, when some urgent necessity requires it, before service is had. In this case no such order was made, and we must therefore look to the service of process to ascertain which court first acquired jurisdiction. It is true that process was sued out first under the bill filed in the Sixth circuit, but service of process was first had under the one filed in this circuit. We therefore conclude that, as between these proceedings, the process of this court being first served on the defendant company, it gave this court full, complete, and prior jurisdiction over it, and the right to grant the relief prayed for in the bill. *Union Mut. L. Ins. Co.* v. *Univ. of Chicago,* 6 FED. REP. 443 ; *Riggs* v. *Johnson Co.* 6 Wall. 196.

It is not contended that any seizure of "the *res*" was ever made under either of the bills of the bondholders filed in the Sixth circuit. On the contrary, it was stated on the hearing of the motion for a receiver in this court, and not denied, but in fact conceded, that the court in the Sixth circuit refused the motion for a receiver either under the bill filed by Mead & Johnson on the sixteenth day of October, or under the bill filed by Owens & Johnson on the twentieth day of October, (now the complainants in this court,) upon the distinct ground that no sufficient showing had been made that the trustee, the Central Trust Company, had declined to act. For this reason the court in that circuit not only refused an order of publication against other necessary defendants, but declined to grant any relief prayed for in either bill against the defendant company, the legal effect of which was to discontinue further proceedings under both bills. That this was the position of the court is apparent, for the reason that shortly after the trustee, the Central Trust Company, filed its bill before it, having the same object in view, to which the defendant company immediately appeared, a receiver was appointed under it without regard to either of the preceding bills, both of which, as we are advised, were afterwards dismissed.

In the bill filed in this court it was distinctly alleged, and established by proof, that one of the complainants had requested the trustee in the first mortgage, the Central Trust Company, to bring a suit of foreclos-

ure on that mortgage, and the trustee refused to take any step or to exercise any of the discretionary powers for that purpose. It is now the settled law that whenever a trustee neglects or refuses to institute proceedings for the protection of bondholders secured by a mortgage, that the bondholders themselves may begin proceedings for that purpose. This was done by the present complainants on behalf of themselves and other bondholders, and the case being first fully matured in this court, by reason of that fact, the court in this circuit first took cognizance of the subject-matter in controversy, acquiring full and complete jurisdiction over it, and as an incident to that jurisdiction has possession and control over any property, which may be the subject-matter of the dispute, to the end of the litigation. *Union Trust Co.* v. *Rockford, etc., R. Co.* 6 Biss. 197; *Riggs* v. *Johnson Co.* 6 Wall. 187.

It is claimed that Martin, having been appointed receiver on the thirty-first day of October, under the bill filed by the Central Trust Company in the Sixth circuit, and that he having seized and taken actual possession and control of the defendant company's property prior to the appointment of Sharp under the order of this court, that the seizure by him of the road gave to that court prior jurisdiction over it in this proceeding. It will be observed that this proceeding in the Sixth circuit was instituted eight days after the proceedings in this court, and the service of process in this court was five days before service in that court. In this position we cannot concur. The jurisdiction of this court attached as soon as the bill was filed and process served, and the fact that an actual seizure was made under the bill subsequently filed, and after process was served under a bill previously filed in this circuit, will not deprive this court of its jurisdiction. We think the rule of law laid down by the learned judge in the case just cited from 6 Biss. is correct, and that "the proper application of this rule does not require that the court which first takes jurisdiction of the case shall also first take, by its officers, possession of the thing in controversy, if tangible and susceptible of seizure, for such a rule would only lead to unseemly haste on the part of its officer to get the manual possession of the property. While the court first appealed to was investigating the rights of the respective parties, another court, acting with more haste, might by a seizure of the property make the first suit wholly unavailing. To avoid such a result, the broad rule is laid down that the court first invoked will not be interfered with by another court while the jurisdiction is retained." The jurisdiction thus acquired is exclusive, and it is the duty of all other tribunals, both by law and comity, not to interfere with it. Chief Justice MARSHALL, in the case of *Smith* v. *McIver*, 9 Wheat. 532, says "that in all cases of concurrent jurisdiction the court which first has possession of the subject must decide it." This rule the supreme court of the United States has approved in several subsequent cases, notably, *Buck* v. *Colbath*, 3 Wall. 341; *Riggs* v. *Johnson Co.* 6 Wall. 166. It must follow, from

the application of this rule, that under the bill filed by the bondholders in this court, that the jurisdiction thus acquired was prior to that obtained by the court in the Sixth circuit, under the bill filed by the trustee, the Central Trust Company, and that, as a legal consequence, the possession of "the *res*" was in law in the possession of this court to the extent of its jurisdiction, as to which we will speak hereafter. It further follows that the order appointing Martin receiver on the thirty-first of October, under the bill filed by the Central Trust Company on the thirtieth of October, does not entitle him to the custody or control of any portion of the property of the defendant company, as this court first acquired jurisdiction over it, and that, as a consequence, all of his acts as such receiver, in pursuance of that order, over the River Division, are a nullity, having been appointed solely under that bill, while the acts of Receiver Sharp, having been appointed by the court which first acquired jurisdiction over and legal possession of the property, must be held to be legal and valid.

Thus far we have only considered the question of jurisdiction as presented by the proceedings originating in the federal tribunals. We come now to consider it upon the proceedings begun and had in the state court, which it is conceded were had prior to any instituted in the federal courts. It appears that Nelson Robinson filed his bill on the twentieth day of September, 1883, in the court of common pleas for Lucas county, in the state of Ohio, asking for the foreclosure of the mortgage on the Ohio Central Railroad Company, and the appointment of a receiver for that road; that the court exercised jurisdiction, and appointed John E. Martin receiver, and subsequently the case was removed to the circuit court of the United States for the Southern district of Ohio. It was claimed in the discussion of this case by the complainants, and scarcely controverted by the defendants, that the court of common pleas of Lucas county had no jurisdiction over the defendant company or its property under the statutes of Ohio, for the reason that the defendant company did not "reside" in the county, nor was any portion of the defendant's property covered by the mortgage found in that county. This construction of the statutes of Ohio seems to have been adopted by the court of the Sixth circuit in the appointment of its receiver, as Martin's appointment was made solely under the bill filed by the Central Trust Company. In this view of the construction of the statute of Ohio we not only concur, but conclude that the proceedings instituted in the court of common pleas of Lucas county were *coram non judice*, and therefore a nullity. But the case is very different in the courts of the state of West Virginia. The same bill that was filed in the court of common pleas of Lucas county in the state of Ohio was filed in the circuit court of Mason county, in this state, on the third day of October, 1883, at which time the defendant company appeared to said bill, waived service of process, and John E. Martin was appointed receiver. On the twenty-ninth day of the same month the cause was removed to this court and regularly dock-

eted therein. It is conceded that the circuit court of Mason county had jurisdiction over the defendant company's property, and in this respect it was wholly unlike the case in the court of common pleas in Lucas county. It will be observed, then, that the state court in West Virginia acquired full and complete jurisdiction on the third day of October, 1883, the day the bill was filed, and that, by reason of its removal to this court, this court's jurisdiction relates back to that date. Under this proceeding this court acquired jurisdiction as of that date, which is prior to any legal proceeding instituted in the courts of Ohio, and the jurisdiction thus acquired is not only prior, but is complete and exclusive over the defendant company's property. *Miller* v. *Tobin,* 18 FED. REP. 609; *Osgood* v. *Railroad Co.* 6 Biss. 330; *Armstrong* v. *Mech. Nat. Bank,* Id. 524; 12 Chi. Leg. N. 176; *Bills* v. *Railroad Co.* 13 Blatchf. 227.

But one question remains unnoticed, and that is, can this court extend its jurisdiction over the defendant company's property beyond its geographical or territorial jurisdiction. This is a trust estate, and must be administered as an entirety for the protection of all concerned. It is well settled that the court that first takes jurisdiction of a part of a trust estate has the legal right to administer upon the whole. It follows that this court, having prior jurisdiction over that portion of the trust estate found in this circuit by reason of the jurisdiction thus acquired, has the right to administer upon that portion of the trust estate lying between the Ohio river and Corning, Ohio, and an order will be entered extending the jurisdiction of Receiver Sharp over the entire property of the defendant company to that place; and in the event he is obstructed by any one claiming to act as receiver by another tribunal, he is required and directed to file a motion before the United States circuit court for the Sixth circuit in Ohio, praying that court to vacate or so modify the order appointing Receiver Martin as it may be in conflict with the order of this court appointing him receiver, and extending his jurisdiction to Corning, Ohio.